Samuel FREEDMAN et al.,

v.

PHILADELPHIA TERMINALS AUC-
TION COMPANY.

Civ. A. No. 19847.

United States District Court
E. D. Pennsylvania.

May 3, 1961.

Walter Stein, and Frank H. Gelman, Philadelphia, Pa., for plaintiffs.

Sidney L. Wickenhaver, and T. Ewing Montgomery, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case [1] is now before the court on plaintiffs' post-trial motions after judgment was entered for defendant on the special verdict of the jury [2] at the con-

---

1. The factual background of the case is summarized in the opinion of 10/30/56, reported at D.C., 145 F.Supp. 820.

2. The special verdict of the jury read as follows (Document No. 66):

"1. Were the terminal charges received or accepted by defendant from the

plaintiffs 'as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, . . . 'to an agent, representative or intermediary' in such transaction who 'was acting in fact

clusion of a trial limited to the cases of three plaintiffs in this spurious class action (see Order of 7/28/60, being Document No. 30, and letter of 9/29/60 attached to Document No. 30, listing 57 plaintiffs in addition to those listed in the caption). During the trial, the issue presented to the jury was limited to the claim under the Section of the anti-trust laws added by the Robinson-Patman Act (15 U.S.C.A. § 13(c) ) [3] making it illegal to receive or accept "anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party * * * or to an agent, representative, or other intermediary where such intermediary is acting * * * for * * * any party to such transaction other than the person by whom such compensation is so granted or paid."

### I. Motion For Judgment Notwithstanding The Verdict

In view of the conclusions reached below on the issue of damages, it is not necessary to consider whether plaintiffs were entitled to have the trial judge direct the jury to answer question 1 "yes" on this record. However, it is noted that the Supreme Court of the United States has recently pointed out in Federal Trade Comm. v. Henry Broch & Co., 1960, 363 U.S. 166, 80 S.Ct. 1158, 4 L.Ed.2d 1124, that § 2(c) of the Robinson-Patman Act (15 U.S.C.A. § 13(c) ) is independent of § 2(a) (at pages 170–1) and that whether a charge "is tantamount to a discriminatory payment of brokerage depends on the circumstances of each case" (363 U.S. at page 176, 80 S.Ct. at page 1164). Cases such as Great Altantic and Pacific Tea Company v. Federal Trade Comm., 3 Cir., 1939, 106 F.2d 667, certiorari denied 1940, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521, rehearing denied 1940, 309 U.S. 694, 60 S.Ct. 466, 84 L.Ed. 1035, are distinguishable on their facts from the situation presented by this record.

■ It is plaintiffs' position (see par. 2, page 1, of Document No. 70) that if the Act has been violated by an illegal and improper collection of money, such as this terminal charge, by defendant, they are immediately damaged as a matter of law to the extent of such payment, such damages being termed "special," and that the jury's function should have been limited to consideration of what plaintiffs call "general damages." This position is rejected by the court.

The Bill which became the Robinson-Patman Act originally contained this language:

"the measure of damages for any violation of this section shall, where

---

for or in behalf or (was) subject to the direct or indirect control of' the receivers?

(yes or no)   No

Compare 4th Column of C1 with last Column D57

"2. Were the following plaintiffs injured in their business or property by reason of the receipt or acceptance by defendant of the terminal charges?

Charles Dankel   (yes or no)   No
Samuel Freedman   (yes or no)   No
E. J. Rosengarten   (yes or no)   No

"3. What was the amount of the injury to the following plaintiffs?

Charles Dankel   $ None
Samuel Freedman   $ None
E. J. Rosengarten   $ None

Damages: PT 7A, PT 9, PT 9A and D 60
Also D 17A, D 46A, D 48, D 49, D 58 & D 59"

3. 15 U.S.C.A. § 13(c) contains this language:

"(c) It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

the fact of damage is shown, and in the absence of proof of greater damage, be presumed to be the pecuniary amount or equivalent of the prohibited discrimination, payment, or grant involved in such violation * * *."

This provision was stricken before the Bill was enacted. In Elizabeth Arden Sales Corporation v. Gus Blass Co., 8 Cir., 1945, 150 F.2d 988, the court stated that this provision would be significant in cases where only special damages can possibly exist and the effect of the omission would be to require that the amount of such damages must specially be proved.[4] The court held that there was a general damage right under § 2(d) and (e) of the Act and that the provision, even if enacted, would not have affected these sections. However, in a later case involving § 2(a), (b) and (e) of the Act, the same Circuit held that a plaintiff must not only show price discrimination but must also prove that the wrong done proximately resulted in ascertainable damage to its business and property.[5]

The Second Circuit, in a case involving § 2(a) and (b), has also rejected the contention that the difference between plaintiffs' cost and the cost to those in whose favor defendant had been discriminatory should be the necessary "measure of damages." Enterprise Industries v. Texas Company, 2 Cir., 1957, 240 F.2d 457, 459, 460.[6] The trial judge pointed out to the jury the exhibits showing the

amounts of the terminal charges paid by plaintiffs and its verdict that such plaintiffs suffered no damages may not be set aside on the ground that plaintiffs are entitled to recover such charges as a matter of law, even if the record requires an affirmative answer to question 1.

■ In Hanover Shoe, Inc. v. United Shoe Machinery Corp., D.C.M.D.Pa.1960, 185 F.Supp. 826, affirmed 3 Cir., 1960, 281 F.2d 481, which involved a cause of action under the Clayton Act (15 U.S.C.A. § 15), the defendant contended that it was relieved from liability because the losses sustained by plaintiff because of defendant's violation of the Act were passed on to plaintiff's customers. The argument was rejected by the trial judge, the court holding that, where plaintiff is a consumer of the product, rather than a middleman who resells it, he may recover the excess paid, whether or not he has ultimately passed the excess along to his customers. The "oil jobber" cases were specifically analyzed and distinguished by Judge Goodrich in his opinion.[7] A later case in this District concerning the Clayton Act (15 U.S.C.A. § 15) and Sherman Act (15 U.S.C.A. § 2) stated: "More recent decisions, however, have held with unanimity that a pecuniary loss is essential to recovery in an anti-trust treble damage action." Delaware Valley Mar. Sup. Co. v. American Tobacco Co., D.C. E.D.Pa.1960, 184 F.Supp. 440, 449.

The present case is more analogous to the "oil jobber" cases [8] than to any others

---

4. The court believed § 2(c) of the Robinson-Patman Act was a section which involved only special, not general, damages. See 150 F.2d at page 996.

5. American Can Co. v. Russellville Canning Co., 8 Cir., 1951, 191 F.2d 38, 54. It is noted, however, that the court added at page 55: "We do not doubt that, ordinarily, where a seller is guilty of unlawful discrimination in prices between customers, the amount of the price difference is the measure of damages, but we think that is not so here." (Plaintiff failed to prove that it was damaged in its business and property in any definite amount by the defendant's practice.)

6. In this case, the court said at page 460:

"At all events the statute should not be read as creating any presumption that 'where the fact of damage is shown * * * the pecuniary amount or equivalent of the prohibited discrimination' is the proper 'measure of damages.'" Plaintiffs' argument concerning this case at page 2 of their letter of April 10, attached to Document No. 73, is rejected.

7. See footnotes 10 and 12 of the decision, 185 F.Supp. at pages 830 and 831.

8. See Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 1945, 148 F.2d 580, certiorari denied 1945, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 1943, 138 F.2d 967, certiorari denied 1944, 321 U.S. 792, 64 S.Ct. 790, 88 L.

cited. Plaintiffs had no automatic right to recover the terminal charges without proof of loss, even if a violation of the Robinson-Patman Act had been found to have existed.

## II. Motion For New Trial

Neither at the conclusion of the charge nor in their brief do plaintiffs allege any errors in the portion of the charge covering damages (N.T. 1343–1350), except for the contentions rejected above, namely, (a) that plaintiffs are entitled to recover the amount of the terminal charges as "special" damages as a matter of law (N.T. 1353), and (b) the fact that plaintiffs collected the amount of these charges from their customers was not a proper consideration in determining the amount, if any, of their damages (N.T. 1359).[9] The charge specifically called the jury's attention to the exhibit (P.T-7A) showing the amount of the terminal charges paid by plaintiffs (N.T. 1344), as well as six other exhibits (N.T. 1347) bearing on the issue of whether plaintiffs had suffered any injury in their business or property. Additional exhibits were called to

the jury's attention in discussing question 3 (N.T. 1348–1350 and 1358).

The language of the charge presents no ground for a new trial and there is sufficient evidence to support the jury's answers to questions 2 and 3.[10] See F.R. Civ.P. 61, 28 U.S.C.A. and Lind v. Schenley Industries, Inc., 3 Cir., 1960, 278 F.2d 79.

■ In view of the pending claims of many other plaintiffs and the Hanover Shoe case, supra, this is an appropriate case for the certification that the order denying these post-trial motions "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C.A. § 1292(b).[11]

## Order

And Now, May 3, 1961, It Is Ordered that plaintiffs' Alternative Motion for Judgment Notwithstanding the Verdict or New Trial (Document No. 70) is Denied, and it is certified that this order involves a controlling question of law as

---

Ed. 1081; Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 1941, 119 F.2d 847, certiorari denied 1941, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516; Leonard v. Socony-Vacuum Oil Co., D.C.W.D.Wis. 1942, 42 F.Supp. 369, appeal dismissed on other grounds, 7 Cir., 1942, 130 F.2d 535.

9. The only time that the words "passing on" were used was in the supplemental charge, where this language appears at N. T. 1357:

"Of course, the defendant contends that this is all covered by the fact that the buyers' agents, these plaintiffs, passed the charge on in their bills. And they did that, there is no question about that. And, hence, they were not damaged in their business or property, because they passed the amount on. You have got to consider that argument, of course, along with all the other evidence."

10. It is noted that the trial judge pointed out, at N. T. 1276–7 (Document No. 72i), during the closing argument of counsel for defendant, that once the jury decided that this was the type of charge contemplated by the statutory language,

they must find three things for the services rendered exception to apply, as follows (N. T. 1277):

"* * * but if they find that it does fall within those words, then for it not to apply to the defendant they must find three things: one, that it is a genuinely-independent intermediary; second, that there were services rendered; and, third, that the charge for the services rendered was not just a token charge,—

"Mr. Wickenhaver: I understand.

"The Court: —that it was reasonable, bore some—

"Mr. Wickenhaver: Yes. I appreciate Your Honor's suggestion, because I want to address my argument in line with what Your Honor instructed.

"The Court: Yes. Well, that is it. I felt that if you went on as you did they would become confused."

This language was further elaborated in the charge given after the closing argument (N. T. 1329 ff.).

11. The briefs of counsel have been placed in the Clerk's file and docketed as Documents Nos. 73 and 74.

to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation (28 U.S.C.A. § 1292(b) ).