Joseph B. **KAUFFMAN**, Plaintiff,

v.

The **DREYFUS FUND, INC.**, et al.,
Defendants.

Civ. No. 1348–68.

United States District Court,
D. New Jersey.

Dec. 18, 1969.

Joseph B. Kauffman, Atlantic City, N. J., and Dilworth, Paxson, Kalish, Kohn &

Levy, by Harold E. Kohn, Philadelphia, Pa., for plaintiff; Bruce W. Kauffman, Atlantic City, N. J., David Pittinsky, and Marcus Manoff, Philadelphia, Pa., of counsel.

Saverio R. Principato, Camden, N. J., for T. Rowe Price & Associates, Inc., Rowe Price Management Co., Inc., T. Rowe Price, C. W. Shaeffer, J. R. Haire, Anchor Corp., T. Rowe Price Growth Stock Fund, Inc., Rowe Price New Horizons Fund, Inc.

Taylor Bischoff, Neutze & Williams, Camden, N. J., for The Dreyfus Fund, Investors Mutual, Inc., Investors Stock Fund, Inc., Investors Variable Payment Fund, Wellington Fund, Windsor Fund, Financial Industrial Fund, United Funds, United Accumulative Fund, United Science Fund, United Income Fund, Value Line Special, etc., Selected American Shares, Inc., Chemical Fund, Inc., Dividend Shares, Inc., Bullock Fund, Ltd., State Street Inv. Corp., Federal St. Fund, Inc., T. Rowe Price Growth Stock Fund, Inc., Rowe Price New Horizons Fund, The Invest. Co. of America, American Mutual Fund, Wash. Mutual Inves. Fund, Technology Fund, Pioneer Fund, Fundamental Inves., Diversified Growth Stock Fund, Diversified Inves. Fund & Hamilton Funds.

Hyland, Davis & Reberkenny, Cherry Hill, N. J., for F. Eberstadt & Co., Calvin Bullock, Ltd., Keystone Custodian Funds, Distributors Group, F. S. Williams, H. Bullock, W. Godfrey, H. R. Anderson Inves. Co. Institute.

Archer, Greiner, Hunter & Read, Camden, N. J., for Investors Div. Service, S. F. Silloway, Financial Programs, T. J. Herbert, Dreyfus Corp., H. M. Stein, Wellington Man. Co., W. L. Morgan, State St. Research, etc., P. C. Cabot, Waddell & Reed, J. J. Merriman, Nat'l Sec. & Research Corp., P. C. Smith, Capital Res. & Man. Co., J. B. Lovelace, Securities Supervisors, E. P. Rubin, Pioneer Man. Corp., P. L. Garret, Supervised Inv. Services, J. Hawkinson, Johnston, Lemon & Co., J. H. Lemon, H. E. Hamilton Manag. Co.

Orlando & Orlando, Haddonfield, N. J., for Stein, Roe & Farnham, H. H. Hagey, Jr., D. C. Samuel & Energy Fund.

Riker, Danzig, Scherer & Brown, Newark, N. J., for Putnam Man. Co., C. M. Werly, Mass. Co., Colonial Man. Assoc., Loomis-Sayles & Co., M. T. Freeman, Scudder, Stevens & Clark, R. T. Lyman, Jr., E. W. Axe & Co., Louis K. Hyde, H. R. Guild & J. H. Orr.

Meyner & Wiley, Newark, N. J., for Fidelity Trend Fund, Fidelity Fund, Puritan Fund, Fidelity Capital Fund, Dow Theory Inv. Fund, Boston Fund, Axe-Houghton Fund B, Eaton & Howard Stock Fund, Eaton & Howard Bal. Fund, The 1 Wm. St. Fund, Channing Shares, Channing Growth Fund, Channing Balanced Fund, Scudder, Stevens & Clark Common Stock Fund, Inc., Scudder, Stevens & Clark Bal. Fund and Stein, Roe & Farnham Bal. Fund.

Moore & Howell, Newark, N. J., for The Geo. Putnam Fund of Boston, The Putnam Growth Fund, Putnam Inv. Fund, The Colonial Fund, Loomis-Sayles Mut. Fund, Mass. Fund, Commonwealth Inv. Co.

Pitney, Hardin & Kipp, Newark, N. J., for American Express Inv. Man. Co. (Fund America Inv. Man. Co.), Fidelity Man. & Research Co., E. C. Johnson, II, Boston Man. & Research Co., Vance, Sanders & Co., Inc., H. T. Vance, Eaton & Howard, Inc., C. F. Eaton, Jr., Lord, Abbett & Co., R. S. Driscol, Lehman Bros., Van Strum & Towne, Inc., F. J. Merrill, A. R. Tyrone, A. B. Hunter & T. A. Martin.

### MEMORANDUM AND ORDER

COHEN, District Judge:

This is a motion by certain of numerous defendants, supported and resisted by briefs and arguments, upon rehearing, General Rule 12–I, U.S.D.C.N.J.,

urging a reconsideration of this Court's Order filed October 1, 1969 which denied their four motions to dismiss the complaint as to them; alternatively, defendants petition for certification pursuant to 28 U.S.C. § 1292(b).

The complaint is stated in three counts. In Count I, brought under the Sherman and Clayton Acts, 15 U.S.C. § 1 et seq., plaintiff seeks the following relief: (a) treble damages for himself, (b) for each member of a class which he purports to represent, (c) for each of the defendant externally managed mutual funds, (d) for each member of the class mentioned in (c), (e) a final injunction restraining the defendants from paying or receiving grossly excessive management fees, and (f) costs and counsel fees; in Count II, brought under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq., he seeks the same treble damages and equitable relief for himself and others as in Count I; and in Count III, brought under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b–1 et seq. and under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–20, 80a–33, he demands such damages as are determined to have been sustained by him and the classes which he purports to represent. In essence, the plaintiff maintains that the defendant management and investment advisors, be they corporate or individual, as well as the alleged "self-dealing" directors of the externally managed mutual funds, conspired to fix grossly excessive fees, thereby illegally monopolizing the mutual funds investment market, all to his damage, and to that of the classes, both mutual and shareholder, which he purports to represent.

The four motions [1] which were reargued and reconsidered were those challenging the legal standing and capacity of the plaintiff to maintain his complaint which is based upon alleged violations of the Antitrust and Securities Laws of the United States and upon conspiracies to violate the same. In support of their motions, the defendants urged the following: (1) that inasmuch as the plaintiff is a shareholder in *only four* of the defendant mutual funds,[2] he does not fairly and adequately represent the interests of all other funds or their shareholders as required by Rules 23 and 23.1, F.R.Civ.P.; (2) he cannot individually or representatively assert claims on behalf of individual shareholders of mutual funds, as such claims are necessarily *derivative* in nature and thus for the benefit of the corporations alone, Rule 12(b) (6), F.R.Civ.P.; (3) he cannot maintain this action to the extent that it seeks relief in Counts I, II and III of the complaint, (a) on behalf of mutual funds of which he is not a shareholder, (b) on behalf of shareholders of said funds of which he is not a shareholder because one may not maintain a legal action on behalf of a corporation or its shareholders, unless he is a shareholder of such corporation, Rules 12(b) (6), 23 and 23.1, F.R.Civ.P., and (4) Counts II and III of the complaint fail to state claims upon which relief can be granted in that the conspiracy alleged, even if true, would not violate either the Antitrust, Security Exchange or Investment Company Acts.

In the alternative, the moving defendants petition for a permissive certification, pursuant to 28 U.S.C. § 1292(b), on the ground that the Order denying their motions to dismiss "involves a controlling question of law as to which there is substantial ground for differ-

---

1. These constitute the first set of many motions filed by the defendants, the balance of which are directed to, among other matters, jurisdiction, venue and process and which were held in abeyance pending disposition of these motions.

2. Plaintiff is a shareholder in the defendants, The Dreyfus Fund, Inc., Fidelity Fund, Putnam Growth and Manhattan Funds.

ence of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation * * *" as to them and as well as to. some 129 other defendants with whom plaintiff has no mutual shareholder relationship and which, if granted, will reduce the case to a derivative antitrust action shorn of the attempted representative class counts. Moreover, the defendants argue that a determination that this action is to proceed under the antitrust or securities laws (including the investment and advisors statutes) as a derivative one will substantially reduce the problems of jurisdiction, venue and process lurking in the other pending motions.[3]

██ Full and careful reconsideration has been given to the arguments advanced by able counsel upon rehearing. Nevertheless, this Court is of the conviction that nothing has been adduced which might lead to a conclusion and ruling different from its Order of October 1, 1969.[4] When that Order was entered denying the four motions, the Court was of the opinion, as it is now, that: (a) plaintiff does fairly and adequately represent claims on behalf of individual shareholders of the defendant mutual funds, not being limited to those of which he is himself a shareholder, nor confined to the assertion of only derivative, as distinguished from nonderivative or representative claims; that (b) this action may be maintained at least as a "hybrid class" action, a class yet to be ascertained, in order to reach and

dispose of other motions involving jurisdiction, process and venue; and that (c) the conspiracy charge of the complaint directed against all investment advisors, be they corporate or individual, and against the alleged "self-dealing" directors can be maintained by the plaintiff subject, of course, to an immediate resolution of other pending motions and ultimately to a determination of whether the conduct of defendants, or any of them, violates the Antitrust or Securities Acts or both. Manifestly, in the role in which plaintiff places himself, he is in effect an "ancillary force" supplementing governmental enforcement of the Antitrust and Securities Laws. Knuth v. Erie-Crawford Dairy Corp. Ass'n, 395 F.2d 420, 423 (3 Cir.1968). Moreover, inasmuch as the directors of the externally managed mutual funds have been charged by the plaintiff as "self-dealing," it should be inferred that in all probability they would not institute this action nor, because a charge of conspiracy has been levelled, is it likely that the shareholders could persuade their respective directors to do so on their behalf or that of their own mutuals. Several cases have upheld class actions of spurious or hybrid-class character and of national extent, where the plaintiff could not claim an interest in each member of the class. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir. 1968); Illinois v. Harper & Row Publishers, Inc., 1969, 301 F.Supp. 484 (N. D. Ill.1969); Philadelphia Electric Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452 (E.D. Pa.1968); City of Philadel-

3. The antitrust statutes distinguish between individuals (15 U.S.C. § 15), requiring personal jurisdiction by territorial process, and corporations (15 U.S.C. § 22) who may be reached with process for jurisdictional purposes if such a corporation can be "found" within the federal district forum, is an "inhabitant" thereof, or has been or is "transacting business" therein. The Securities Acts make no such distinctions. These considerations are most pertinent to some of the remaining motions and may, to a large extent,

be dependent upon or resolved by the present motions.

4. The Order dated September 30th and filed October 1, 1969, contained an unfortunate choice of words when it made reference to "pretrial discovery" at this juncture of the proceedings. It was not intended to relate discovery to the four motions which were denied, but rather to certain remaining motions which may require extensive factual inquiry. To that extent it will be amended to delete that phrase.

phia v. Morton Salt Co., 248 F.Supp. 506 (E.D. Pa.1965).

Although the Court's prior ruling denying the defendants' motions to dismiss the complaint, or certain counts thereof, remains unchanged upon rehearing, nevertheless, it is the opinion of the Court that the said Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal therefrom may materially advance the ultimate termination of the litigation in this complex, potentially protracted and probable multi-district antitrust and securities action, thereby avoiding great expenditures of time and money for pretrial procedures. These motions do go to the merits of the litigation in the sense that they strike at plaintiff's legal capacity to sue certain defendants in the very first instance. Further, whether or not these large mutual funds should be put to the prohibitive expense of defense, when the plaintiff's status to maintain such an action against certain of them is challenged as a matter of law, is an issue which should receive early resolution. In these circumstances, one is mindful of Judge Maris' admonition in 1958, expressed in Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431 at page 433, when Section 1292(b) of Title 28, United States Code, was but two months old:

"* * * Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely."

See also: Freedman v. Phila. Terminals Auction Co., 197 F.Supp. 849 (E.D.Pa. 1961), aff'd 301 F.2d 830 (3 Cir.1962), cert. den. 371 U.S. 829, 83 S.Ct. 40, 9 L. Ed.2d 67 (1962); King v. Grand Lodge of Inter'l. Ass'n. of Machinists, 215 F. Supp. 351, 355 (N.D.Cal.1963), aff'd 335 F.2d 340 (9 Cir.1964), cert. den. 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964), where the denial of a motion for summary judgment which challenged the plaintiffs' rights to sue, as a matter of legal capacity, for alleged improper discharges from union offices was held to be properly certified because it involved a controlling question of their rights to relief on three of six causes of action.

The instant case is not an ordinary one—it is, rather, one of great dimension involving, as it does, some 141 defendants and makes an attack nationwide upon the entire mutual fund industry and demands damages in many millions of dollars. Consequently, and particularly in a case of this magnitude, the possibility of judicial error warrants the grant of a certificate for interlocutory appeal in the interest of avoiding needless and large expenditures of time and money by these defendants and, perhaps more importantly, the adverse exposure of their reputations and public images in today's hyper-sensitive financial markets. In such an event, if there be error, it seems better by far for a trial court to err upon the side of procedural liberality rather than succumb to considerations of rigid conservatism. In these circumstances, certification of appeal seems most appropriate at this critical juncture and well within the sphere of interlocutory appeal provided by Congress for extraordinary litigation.

Accordingly, an order so certified shall be granted and is entered herewith.

### ORDER

This matter having been brought on by counsel for defendants for reconsideration of motions denied by Order filed October 1, 1969, and reargument having been made by opposing counsel; and

The Court being satisfied that nothing has been adduced which should lead

it to a different ruling, except that the phrase in the prior Order reading "pending pretrial discovery" should be deleted;

Now, therefore, it is on this 18th day of December, 1969, upon reconsideration, ordered that the defendants' motion for a redetermination of this Court's prior order filed October 1, 1969 is denied hereby; and

It is further ordered that the phrase "pending pretrial discovery" in the said Order be deleted and deemed amended to that extent only; and further

It is certified that, in the opinion of the Court, the ruling on said motions involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal may materially advance the ultimate disposition of this protracted, complex, expensive and extraordinary litigation with respect to many, if not most, of the parties-defendant hereto; and consonant therewith,

It is further ordered that all proceedings in this Court be stayed until further order by the United States Court of Appeals for the Third Circuit, or this Court.